## Frank et al. v. Dierson et al.

(Decided June 6, 1930.)

**230**

A. M. MARRET for appellants.

FRED FORCHT, L. R. CURTIS, H. M. PECKINPAUGH and T. M. GALPHIN, Jr., for appellees.

Opinion of the Court by Judge Dietzman—Affirming.

The appellees brought this suit against the appellants, alleging that they were the owners of a described lot fronting on Samuel street in the city of Louisville, that the appellants were the owners of an adjoining lot, that the appellants had so filled and elevated their lot as to change the grade of their lot so to quote: "As to divert the natural drainage of the water from Samuel Street and to cast the same toward, over and upon the lot of the appellees," and that thereby the appellees' lot had been much damaged. On a trial before a jury, the appellees were awarded a verdict of $700, and, from the judgment entered on that verdict, this appeal is prosecuted.

As grounds for reversal, appellants urge, first, that they were entitled to a peremptory instruction. It is true that the proof in this case shows that the two lots of the parties herein were located on a slope, and that the appellants' lot was higher up the slope than that of the appelleees. But evidently the lots must have been terraced or benched, because even the proof for the appellants overwhelmingly establishes that, at least prior to the grading of the lots which we shall presently mention, the drainage of appellants' lot was from Samuel street back to the alley, and the drainage of the appellees' lot was from the alley frontwards to Samuel street. The testimony of Martin Frank, who was the father of the appellant Matthew Frank, is typical:

"Q. I believe you constructed this house for your son on Samuel street? A. Yes sir.

"Q. Are you familiar with the lay of that lot and how the water drained before ever any work was done on the lot? A. Yes sir.

"Q. How did the water drain? A. It drained to the alley.

"Q. Did any of it drain toward the Dierson lot? A. None at all.

"Q. How did the water drain from Diersons' lot? Was that on a level? A. It drained from the back to the front onto Boyle—onto Samuel street. The lot I built on drained from Samuel street to the alley."

It was abundantly established, and indeed by the appellants themselves, that prior to their erection of a house on their lot there was no drainage of any character from their lot onto the appellees' lot. The appellees built their house on their lot first, and thereafter appellants built a house on their lot. It is conceded that the dirt which was taken out of a rather spacious basement under appellants' house was used in filling around the foundation. There was a dispute in the evidence as to whether or not any dirt was brought from elsewhere and put upon this lot. There was a great deal of evidence to show that, after the appellants built their house and filled their lot at least with the dirt they took from their basement, the drainage from their lot was to and on the appellees' lot. There was some evidence to show that this was caused by the way appellees graded their lot, but there was also evidence to show that this drainage was caused solely by the way appellants graded their lot, and, this being true and it being overwhelmingly established that there was no drainage onto appellees' lot from appellants' lot prior to the filling of appellants' lot, it was for the jury to say what in their judgment caused the drainage onto appellees' lot. We are therefore of opinion that the motion for a peremptory instruction was properly overruled.

It is next argued that the court erred in the instructions it gave. The court in instructing the jury informed it that the appelleees were entitled to recover if the appellants changed or diverted the natural flow of the water over and onto the appellees' lot, or if the appellants diverted and caused to flow onto and over the land of the appellees water in larger quantities or with greater force than it flowed prior to the filling or improving of appellants' lot. It is argued that this instruction is erroneous, because there was no allegation in the petition basing a cause of action upon a diversion of water with greater force than had flowed prior to the filling of the lot and no proof to that effect. However, as may be seen from the portion of the petition which we quoted at the outset of this opinion, it was averred, not only that the natural drainage had been diverted, but that it had been *cast* upon the lot of the appellees. The verb "cast" implies the idea of force as may be ascertained from reading its definitions in Webster's Unabridged Dictionary, and hence the allegation quoted from the petition

was sufficient to support the instruction. As even appellants' proof showed there had been no flow from their lot onto appellees' lot prior to the fill, it follows that practically any diversion of the water would amount to a casting with greater force than existed prior to the fill. Further, there was evidence to show that large quantities of mud and silt were washed into appellees' cellar, from which physical fact the jury could legitimately have concluded that the diversion of the water caused it to flow onto the appellees' lot with great force, otherwise the mud and silt would not have been washed as it had been. There was evidence to support the instructions of the court as given.

It is next argued that the court erred in failing to instruct the jury that it was the appellees' duty to minimize their damages if they could have done so, but, as the appellants offered no instruction on this theory, they cannot complain of the court's failure to give one.

It is next argued that the court in instructing the jury on the measure of damages submitted only the measure applicable to a permanent nuisance and did not leave it to the jury to say whether the nuisance, if any, was permanent or temporary. The case was practiced throughout by both sides on the theory that the fill of the appellants' lot constituted a permanent structure. Indeed, when appellees undertook to introduce evidence to show at what cost a retaining wall could be built by the appellants so as to obviate the drainage, appellants strenuously objected. They offered no instruction in line with the theory they now urge. In view of these considerations, appellants cannot now argue that it should have been left to the jury to say whether the fill on appellants' lot was a permanent or a temporary structure.

It is lastly contended that there was no evidence as to appellees' damage, if any. Appellants cannot be serious in this contention. There was abundant testimony to show that the fair market value of appellees' lot had been diminished by reason of the drainage complained of far in excess of the verdict of the jury.

The judgment is affirmed.